UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHARON CLEMENTS,

    Plaintiff,

vs.                                              Case No. 3:04-cv-1106-J-HTS

JO ANNE B. BARNHART,
Commissioner of Social
Security,

    Defendant.
_____

## OPINION AND ORDER[1]

This cause is before the Court seeking review of the final decision of the Commissioner of Social Security (Commissioner) terminating Plaintiff's Disability Insurance Benefits (DIB) under the Social Security Act. Administrative remedies have been exhausted and the case is properly before the Court.

Sharon Clements filed her application for DIB on September 7, 1993. In a disability determination dated April 14, 1994, Plaintiff was awarded benefits effective July 16, 1993.

On July 18, 2001, the Commissioner determined Plaintiff's disability ceased as of July, 2001. The cessation decision was affirmed after a proceeding was conducted on April 1, 2003, by

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference - Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #7).

Andrea Pantalone, a hearing officer.  Both Claimant and her son testified.  Administrative Law Judge Gregory Wilson (ALJ) conducted a hearing on January 15, 2004.  At the hearing, testimony was given by Claimant, who was represented by counsel.  Charles K. Heartsill, a vocational expert, also testified.

In a Decision dated April 22, 2004, the ALJ found Ms. Clements's disability ceased as of July 1, 2001, Transcript of Administrative Proceedings (Tr.) at 22-23, and entitlement to benefits ended in September of 2001.  *Id*.  The Appeals Council determined no basis existed for granting review and the Commissioner's decision became final.

## I.  Background: Declarations

At the time of the hearing before the ALJ, Ms. Clements was forty-six years old and lived with her husband.  She had attended high school up to the twelfth grade.  Previously, she worked in a day care facility.

Claimant believes she is unable to work due to "[a]sthma, and depression, and carpal tunnel syndrome in [her] hand, and [her] left shoulder." *Id.* at 32.  The asthma causes Ms. Clements to have trouble breathing, especially when she is exposed to dust, perfume, smoking, or carpeting.  She takes medication to help control the condition.  Asthma attacks that cause her more severe breathing problems usually occur once or twice each month.  Depression

results in Plaintiff feeling lonely and crying often and she was hospitalized for it in 2003.  She now takes medications and sees a mental health professional once a month.  Ms. Clements has difficulty holding things with her left hand and has joint pain in the right.  She is unable to reach above her head or lift more than five pounds with her left arm.

Claimant cooks, washes the dishes, and does some sweeping. She is able to drive and attends church once or twice each month. She shops occasionally and accompanies her husband to dinner.

## II.  **Standard of Review**

The Commissioner periodically conducts "continuing disability reviews to determine whether or not [a claimant] continue[s] to meet the disability requirements of the law."  20 C.F.R. § 404.1590(a).  In evaluating whether a claimant continues to be disabled, the ALJ must follow the sequential inquiry described in the regulations.[2]  The Commissioner "will consider all [the

---

[2] The process involves eight questions posed until a finding of continued disability is either precluded or mandated.  The questions are as follows: (1) Is the claimant engaged in substantial gainful activity?; (2) If not, does the claimant "have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart?"; (3) If not, "has there been medical improvement as defined in paragraph (b)(1) of this section?"; (4) If yes, is the medical improvement related to the claimant's ability to do work?; (5) If there has been no medical improvement or the medical improvement is not related to the claimant's ability to do work, are "any of the exceptions in paragraphs (d) and (e)" applicable?; (6) If an exception applies or the medical improvement is related to the claimant's ability to do work, are the claimant's current impairments, when considered in combination, severe?; (7) If yes, can the claimant perform his or her past work?; (8) If not, can he or she engage in other work of the sort found in the national economy?  *Id.* § 404.1594(f)(1)-(8).

claimant's] current impairments not just that impairment(s) present at the time of the most recent favorable determination." *Id.* § 404.1594(b)(5). "[A] new impairment(s) need not be expected to last 12 months or to result in death, but it must be severe enough to keep [the claimant] from doing substantial gainful activity, or severe enough so that [he or she is] still disabled under § 404.1594." *Id.* § 404.1598. In a termination of benefits case, the Court should consider whether substantial evidence supports the conclusion that "there has been . . . medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and . . . the individual is now able to engage in substantial gainful activity[.]"  42 U.S.C. § 423(f)(1).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. § 405(g). "[F]actual findings are conclusive if . . . supported by 'substantial evidence,'" but the application of legal principles is examined "with close scrutiny."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)); *see also Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993) ("[N]o presumption of validity attaches to the . . . determination of the proper legal standards to be applied in evaluating claims.").

Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "'If the Commissioner's decision is supported by substantial evidence, [the reviewing court] must affirm, even if the proof preponderates against it.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)); *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (per curiam); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam).  In determining whether substantial evidence supports a finding, portions of the transcript are not viewed in isolation, but are examined for their impact upon "the record as a whole."  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  However, the existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.  *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Summary of Argument

Plaintiff raises two issues.  First, she complains the judge "erred when he failed to discuss highly relevant and proba[]tive evidence."  Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. #10; Memorandum) at 5 (emphasis omitted); *see also id.* at 1.  Specifically, it is contented the ALJ "fail[ed] to analyze, or even reference, a Medical Opinion Re: Ability to do Work-Related Activities (Mental) dated January 26, 2004 from Satyen Madkaiker, M.D., Ms. Clements' treating mental health physician." *Id.* at 5.  Additionally, she argues the judge "erred when he failed to find [her] schizophrenia was a severe impairment[.]" *Id.* at 1, 9 (emphasis omitted).

### IV.  Analysis

A.  Failure to Discuss Evidence

According to Claimant, the Commissioner's decision must be reversed because the ALJ did not mention a report from Dr. Satyen Madkaiker, dated January 26, 2004, indicating limitations she suffered following a diagnosis of schizophrenia.  Memorandum at 5, 7.  The Commissioner responds that the judge, pursuant to agency policy, was to "consider [the] claimant's condition at the time of cessation."  Memorandum in Support of the Commissioner's Decision (Doc. #14) at 6.  It is asserted "Dr. Madkaiker's medical source statement reflecting Plaintiff's condition in January 2004 is not

-6-

relevant to the ALJ's determination that Plaintiff was no longer disabled as of July 1, 2001." *Id.* (capitalization omitted). This is consistent with the determination of the Appeals Council that "the treating source opinion dated January 26, 2004, regarding [Plaintiff's] ability to do work-related activities on a day-to-day basis in a regular work setting" did "not affect the decision about whether [she was] no longer disabled as of July 1, 2001." Tr. at 6.

Pursuant to statute, in cessation cases, the decision regarding whether a claimant "is now able to engage in substantial gainful activity" must "be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented[.]" 42 U.S.C. § 423(f). The Commissioner "interprets the term 'current,' as used in the statutory and regulatory language concerning termination of disability benefits, to relate to the time of the cessation under consideration in the initial determination of cessation." AR 92-2(6), 1992 WL 425419, at *2 (March 17, 1992). "In deciding the appeal of [a] cessation determination, the [adjudicator] considers what the claimant's condition was at the time of the cessation determination, not the claimant's condition at the time of the disability

-7-

hearing/reconsideration determination, ALJ decision or Appeals Council decision." *Id.*[3]

While the Commissioner argues the evidence at issue is irrelevant, the ALJ actually considered medical records from the doctor bearing the same date in the Decision. *See* Tr. at 17. He stated that, "on January 26, 2004, after several follow-up visits, [Dr. Madkaiker noted Plaintiff] was feeling much better." *Id.* While a progress note from that date includes such a notation, *id.* at 285, there is no indication the ALJ considered the report completed on that date. Dr. Madkaiker filled out an assessment of Plaintiff's ability to do certain mental activities that appears to include significant limitations. *See id*. at 295-98. The judge discussed the other evidence in the record from that doctor, but did not mention the assessment. *Id.* at 17.

Regardless of the Commissioner's argument and Appeals Council's conclusion regarding the relevant date, a large number of the medical records referred to in the Decision discuss Plaintiff's condition on dates after July 1, 2001. *See id*. at 6, 16-19; *see*

---

[3] The acquiescence ruling articulated this policy following a Sixth Circuit determination that evidence of a claimant's condition through the date of the disability hearing is relevant in cessation cases. *See Difford v. Sec'y of Heath & Human Servs.*, 910 F.2d 1316, 1320 (6th Cir. 1990). There is a split in the circuits on this matter. *See Johnson v. Apfel*, 191 F.3d 770, 775-76 (7th Cir. 1999) (concluding evidence relevant only if it relates to a plaintiff's condition as of the cessation date); *see also McNabb v. Barnhart*, 340 F.3d 943, 944-45 (9th Cir. 2003) (acknowledging disagreement between circuits). The Eleventh Circuit has not decided this issue and, in this case, the Court need not do so. As discussed herein, the ALJ actually evaluated evidence regarding Plaintiff's condition after July 1, 2001, and specifically concluded she had not been disabled since that date.

*e.g., id.* at 215-19 (mental status evaluation from Dr. Peter Knox in 2003), 280-83 (December 2003 report of examination by Dr. H. Tran concluding, among other things, there were "[n]o signs of mental disorders"). Based on all this evidence, the ALJ expressly determined "[C]laimant ha[d] not been disabled within the meaning of the Social Security Act *since* July 2001[.]" *Id.* at 22 (emphasis added). Dr. Madkaiker's evaluation of Ms. Clements's mental abilities was clearly relevant to that determination. *See Cogswell v. Barnhart*, No. Civ. 04-171-P-S, 2005 WL 767171, at *3 n.3 (D. Me. March 14, 2005) (finding evidence adduced through the date of hearing relevant when judge found the plaintiff had not been disabled since cessation date), *adopted by* No. Civ. 04-171-P-S, 2005 WL 775905 (D. Me. Apr. 4, 2005). Thus, it should have been considered.

"Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . ." *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). Rather, the judge "must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (citation and internal quotation marks omitted).

The ALJ did not articulate either acceptance or rejection of Dr. Madkaiker's opinion regarding Plaintiff's ability to do work

-9-

related activities.  Though it was stated that "Dr. Madkaiker declared in January 2004 that the claimant was feeling much better[,]" Tr. at 20, it does not appear the ALJ considered the assessment as he did not discuss it.  Thus, the case must be remanded so Dr. Madkaiker's opinion may be considered and, if rejected, an explanation provided.[4]

### B. Severe Impairment

Plaintiff next argues the judge incorrectly omitted schizophrenia as one of her severe impairments.  Memorandum at 9. According to Ms. Clements, the ALJ "only found she suffered from a 'mood disorder[.]'"  *Id.* at 11.

"A severe impairment is one that is more than 'a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations.'"  *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam) (quoting 20 C.F.R. §

---

[4] As previously stated, this ruling is not intended to determine the point in time at which a plaintiff's condition is ordinarily material in a cessation context, *i.e.,* "status through date of hearing" or "only through date disability determined to have ceased[.]" *Cogswell*, 2005 WL 767171, at *3 n.3. The ALJ in this case undertook to consider "*all* of the medical opinions[,]" Tr. at 22 (emphasis added), in reaching the conclusion "claimant has not been disabled within the meaning of the Social Security Act since July 2001[.]" *Id.* As such, the fact that a report from Plaintiff's treating mental health physician reflecting significant limitations was apparently overlooked requires the matter to be remanded.
   The ALJ should not be faulted for considering evidence beyond the cessation date.  The acquiescence ruling seems to contemplate this and case authority so holds.  *See* AR 92-2(6) ("In deciding the appeal . . . if the evidence indicates that the claimant's condition may have again become disabling subsequent to the cessation of his or her disability or that he or she has a new impairment, the adjudicator [should] solicit[] a new application."); *McNabb*, 340 F.3d at 945 (finding consideration of post-cessation evidence appropriate).

416.924(c)).  "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).

"At the second step . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities."  Social Security Ruling 85-28.

The regulations provide:

> (b) *Basic Work Activities*.  When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include–
>
> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2)  Capacities for seeing, hearing, and speaking;
> (3)  Understanding, carrying out, and remembering simple instructions;
> (4)  Use of judgment;
> (5)  Responding appropriately to supervision, co-workers, and usual work situations; and
> (6)  Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

The step two burden of proof is a threshold inquiry described as minimal.  *See, e.g., Bridges v. Bowen,* 815 F.2d 622 (11th Cir. 1987) (per curiam); *Brady v. Heckler,* 724 F.2d 914 (11th Cir. 1984) (per curiam).  The claimant's threshold burden has been defined as follows:  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the

individual's ability to work, irrespective of age, education, or work experience." *Bridges,* 815 F.2d at 625 (quoting *Brady*, 724 F.2d at 920) (alteration in original); *see also Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002).

In this case, the ALJ found Claimant's severe impairments were "asthma and depression with a[n] anxiety disorder[.]" Tr. at 20, *see id.* at 22.  Schizophrenia was not included as a severe impairment.  *See also id.* at 17.  Dr. Madkaiker was the mental health professional who diagnosed Plaintiff with this ailment. *See id.* at 291, 295, 299, 303.  As the case is due to be remanded for consideration of certain evidence from that doctor, the ALJ should also evaluate the diagnosis of schizophrenia and, if appropriate,[5] determine what effect it would have on Ms. Clements's ability to work.

### V.  Conclusion

In accordance with the foregoing, it is hereby **ORDERED:**

The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: 1) consider Dr. Madkaiker's opinion as expressed in the January 26, 2004, report and, if rejected, provide an explanation therefor; 2)

---

[5] Of course, if the ALJ finds the schizophrenia did not come into existence until after the cessation date and applies the policy of the Social Security Administration as articulated in AR 92-2(6), he could determine the condition is immaterial as to that issue.

evaluate Plaintiff's diagnosis of schizophrenia and, if appropriate, determine the effect it would have on her ability to work; and 3) conduct any other proceedings deemed proper.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of July, 2005.

/s/      Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of record
     and *pro se* parties, if any